## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER**<br>**1519 New Hampshire Ave. NW**<br>**Washington, D.C. 20036**<br><br>  **Plaintiff,**<br><br>  **v.**<br><br>**U.S. IMMIGRATION AND CUSTOMS**<br>**ENFORCEMENT**<br>**500 12th Street SW**<br>**Washington, D.C. 20536**<br><br>  **Defendant.** | **Civ. Action No.** 22-762 |

## <u>COMPLAINT FOR INJUNCTIVE RELIEF</u>

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for

injunctive and other appropriate relief, seeking the release of agency records requested by the

Plaintiff Electronic Privacy Information Center ("EPIC") from Defendant U.S. Immigration and

Customs Enforcement ("ICE"), a component of the U.S. Department of Homeland Security

("DHS").

2.      EPIC challenges (1) ICE's failure to provide a timely response to EPIC's Freedom of

Information Act requests ("EPIC's FOIA Requests") for agency records regarding ICE's

purchase and use of surveillance tools that collect personal social media data and mobile location

data, and (2) ICE's failure to conduct a search for records responsive to EPIC's FOIA Requests

and to disclose to EPIC all non-exempt portions thereof.

**Jurisdiction and Venue**

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 552 (a)(4)(B), (a)(6)(E)(iii). This Court has personal jurisdiction over Defendant ICE.

4.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

5.      Plaintiff EPIC is a nonprofit organization, incorporated in Washington, D.C., established in 1994 to focus public attention on emerging privacy and civil liberties issues. Central to EPIC's mission is oversight and analysis of government activities. EPIC's Advisory Board includes distinguished experts in law, technology, public policy, and cybersecurity. EPIC routinely disseminates information to the public through the EPIC website, the EPIC Alert, and various other news organizations. EPIC is a representative of the news media. *EPIC v. DOD*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

6.      Defendant ICE is a component of DHS. Both ICE and DHS are federal agencies within the meaning of 5 U.S.C. § 552(f)(1) and are headquartered in Washington, D.C.

**Facts**

7.      ICE is a federal law enforcement agency that enforces federal border and immigration laws and conducts investigations into transnational crimes.[1]

8.      To target immigrants and migrants, ICE regularly contracts to purchase surveillance tools. These tools provide ICE with extensive personal information about its targets, including details regarding their relationships as well as their physical locations and movements.

---

[1] *See* U.S. Immigration and Customs Enforcement, *ICE's Mission* (2021), https://www.ice.gov/mission.

9.      Much of the data obtained and used by ICE is data that individuals never consented to disclose to law enforcement.[2] Much of the data is also information that ICE could not legally collect directly without a warrant.[3]

10.     ICE's purchase and use of this data to surveil migrants, immigrants, and immigrant communities is a significant threat to privacy and liberty.[4]

### ICE's Purchase of ShadowDragon's SocialNet

11.     ShadowDragon produces and sells the investigative tool "SocialNet," which ShadowDragon markets for "social media monitoring and investigations."[5]

12.     SocialNet compiles data from multiple social media and other websites and organizes the information for the user. Through SocialNet, users can craft a comprehensive profile of a person, including personal identifying information, social connections, geolocations, and details about their lifestyles.[6]

13.     Panamerica Computers, Inc., is a Virginia-headquartered information technology vendor that regularly contracts with the Federal Government.[7]

---

[2] *See* Drew Harwell, *ICE Investigators Used a Private Utility Database Covering Millions to Pursue Immigration Violations*, Wash. Post (Feb. 26, 2021), https://www.washingtonpost.com/technology/2021/02/26/ice-private-utility-data ("When you sign up for electricity, you don't expect them to send immigration agents to your front door.").
[3] *See id.*
[4] This threat to privacy and liberty has been recognized by organizations advancing privacy rights and immigrant justice. *See, e.g.*, *Traveler Screening and Border Surveillance*, EPIC (2022), https://epic.org/issues/surveillance-oversight/border-surveillance; *Location Tracking*, EPIC (2022), https://epic.org/issues/data-protection/location-tracking; *Surveillance, Tech, & Immigration Policing*, IDP (2022), https://www.immigrantdefenseproject.org/surveillance-tech-immigration-policing; *#NoTechForICE* (2021), Mijente, https://notechforice.com.
[5] *See SocialNet/*, ShadowDragon (2022), https://shadowdragon.io/socialnet.
[6] *See* Michael Kwet, *ShadowDragon: Inside the Social Media Surveillance Software that can Watch Your Every Move*, Intercept (Sept. 21, 2021), https://theintercept.com/2021/09/21/surveillance-social-media-police-microsoft-shadowdragon-kaseware; *ShadowDragon – Investigative Rule 8: Bad Guys Order Pizza Too*, Vimeo (2019), https://vimeo.com/345808418 (video posted by user ShadowDragonIO depicting ShadowDragon founder Daniel Clemens describing SocialNet).
[7] *See Company*, Panamerica Computers, Inc. (2020), https://www.pcitec.com/company.

14.     According to the U.S. Government's Spending Data Website, ICE contracted to purchase ShadowDragon's SocialNet from Panamerica Computers, Inc., in 2021 for an award amount of $602,056. The period of performance consisted of a start date of August 31, 2021, and an end date of September 6, 2022.[8]

15.     C & C International Computers & Consultants, Inc., is a Florida-headquartered information technology vendor that regularly contracts with DHS.[9]

16.     According to the U.S. Government's Spending Data Website, ICE contracted to purchase ShadowDragon's SocialNet from C & C International Computers & Consultants, Inc. in 2020 for an award amount of $289,500. The period of performance consisted of a start date of July 16, 2020, and an end date of September 6, 2021.[10]

### ICE's Purchase of Location Data from Babel Street

17.     Since at least 2017, ICE has been purchasing location data "drawn from ordinary cellphone apps, including those for games, weather and e-commerce" and using that data to track immigrants' locations.[11]

18.     Babel Street produces and sells the investigative tool "Locate X."[12]

19.     Locate X is a software that uses mobile location data to track individuals' movements. The tool can be used to draw a geo-fence around a location, identify cell phones that enter the

---

[8] *See Delivery Order (DO)*, PIID No. 70CMSD21FR0000107, USASpending.gov, https://www.usaspending.gov/award/CONT_AWD_70CMSD21FR0000107_7012_HSHQDC12D00013_7001.
[9] *See About C&C*, C&C International Computers & Consultants, https://www.ccintercomputers.com/about.
[10] *See Delivery Order (DO)*, PIID No. 70CMSD20FR0000090, USASpending.gov, https://www.usaspending.gov/award/CONT_AWD_70CMSD20FR0000090_7012_HSHQDC12D00011_7001.
[11] Byron Tau & Michelle Hackman, *Federal Agencies Use Cellphone Location Data for Immigration Enforcement*, Wall St. J. (Feb. 7, 2020), https://www.wsj.com/articles/federal-agencies-use-cellphone-location-data-for-immigration-enforcement-11581078600.
[12] *See Babel Street*, Babel Street (2022), https://www.babelstreet.com; Charles Levinson, *Through Apps, Not Warrants, 'Locate X' Allows Federal Law Enforcement to Track Phones*, Protocol (Mar. 5, 2020), https://www.protocol.com/government-buying-location-data.

geo-fenced location at given times, and pinpoint the prior and subsequent movements of those devices.[13]

20.     According to the U.S. Government Spending Data Website, ICE contracted with Babel Street, Inc., in 2019 for an award amount of $1,452,200. The period of performance consisted of a start date of September 12, 2019, a current end date of September 29, 2021, and a potential end date of September 29, 2022. The transaction history listed on the site shows that ICE exercised an option on August 10, 2021.[14]

21.     Thundercat Technology, LLC, is a Virginia-headquartered business information technology vendor that contracts with government agencies.[15]

22.     According to the U.S. Government's Spending Data Website, ICE contracted with Thundercat Technology, LLC, for Babel Street software in 2018 for an award amount of $1,100,359.89. The period of performance consisted of a start date of September 19, 2018, and an end date of September 29, 2020.[16]

### *EPIC's SocialNet FOIA Request*

23.     On December 3, 2021, EPIC submitted a FOIA Request to ICE's Freedom of Information Act Office via email.

24.     EPIC's FOIA Request sought records related to ICE's communications and contracts with ShadowDragon and ICE's use of SocialNet.

---

[13] Levinson, *supra* note 12.
[14] *Blanket Purchase Agreement (BPA) Call*, PIID No. 70CMSD19FC0000052, USASpending.gov, https://www.usaspending.gov/award/CONT_AWD_70CMSD19FC0000052_7012_70CMSD19A00000007_7012.
[15] Thundercat Technology (2022), https://www.thundercattech.com.
[16] *Delivery Order (DO)*, PIID No. 70CMSD18FR0000226, USASpending.gov, https://www.usaspending.gov/award/CONT_AWD_70CMSD18FR0000226_7012_HSHQDC13D00002_7001.

25.     Specifically, EPIC requested the following:

> 1. All emails, communications, and memoranda:
>     a. Shared between ICE and any representative from
>     ShadowDragon or Packet Ninjas;
>     b. Or referencing the following terms: ShadowDragon, Packet
>     Ninjas, SocialNet;
>
> 2. All contracts, contract proposals, purchase card transaction worksheets,
> quotes, invoices, receipts, orders, and licenses:
>     a. Between ICE and ShadowDragon or Packet Ninjas;
>     b. Between ICE and other vendor(s) mentioning ShadowDragon,
>     Packet Ninjas, or SocialNet;
>
> 3. All presentations and sales or marketing materials mentioning
> ShadowDragon or SocialNet;
>
> 4. Any training materials, handbooks, or presentations:
>     a. Mentioning ShadowDragon or SocialNet;
>
> 5. Any Privacy Impact Assessments (PIAs), Privacy Threshold Analysis
> (PTAs), privacy policies, instructions, directives, or other privacy
> analyses:
>     a. Concerning use of ShadowDragon software or SocialNet;
>
> 6. All reports, legal memoranda, white papers, talking points, and briefing
> materials discussing use of ShadowDragon software, SocialNet, or other
> social media monitoring or data collection software.

26.     EPIC sought "news media" fee status under 5 U.S.C. § 552(a)(4)(A)(ii)(II). EPIC sought

a waiver of duplication fees under 5 U.S.C. § 552(a)(4)(A)(iii).

27.     EPIC sought expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II) and 6 C.F.R.

§ 5.5(e)(1)(ii). EPIC cited media reports exemplifying the public's growing concern about

government surveillance through personal data collection, as well as concern about ICE treating

undocumented immigrants and migrants poorly. EPIC stated that there is an urgency to inform

the public about ICE's use of technological tools that threaten privacy rights. EPIC also cited

*EPIC v. DOD* to show EPIC satisfies the regulation's "representative of the news media" criteria.

241 F. Supp. 2d 5, 15 (D.D.C. 2003); 6 C.F.R. § 5.5(e)(3).

28.   EPIC never received any correspondence from ICE acknowledging this FOIA request.

29.   EPIC emailed ICE to request a status update regarding EPIC's FOIA request on three

occasions: January 11, 2022, January 24, 2022, and February 2, 2022.

*30*.   EPIC attempted to call ICE on February 25, 2022, was directed by the automated

message to email ICE inquiries regarding FOIA requests, and was unable to leave a voicemail.

### *EPIC's Location Data and Babel Street FOIA Request*

31.   On December 3, 2021, EPIC submitted a FOIA Request to ICE's Freedom of Information

Act Office via email.

32.   EPIC's FOIA Request sought records related to ICE's communications and contracts

with Babel Street, use of Babel Street's software, and use of location data.

33.   Specifically, EPIC requested the following:

> 1. All emails, communications, and memoranda:
>    a. Shared between ICE and any representative from Babel Street;
>    b. Or referencing Babel Street or Locate X;
>    c. Or shared since 2017 and mentioning location data or geolocation;
>
> 2. All contracts, contract proposals, purchase card transaction worksheets, quotes, invoices, receipts, orders, and licenses:
>    a. Between ICE and Babel Street;
>    b. Between ICE and other vendor(s) mentioning Babel Street or Locate X;
>
> 3. All presentations and sales or marketing materials mentioning Babel Street or Locate X;
>
> 4. Any training materials, handbooks, or presentations:
>    a. Mentioning Babel Street or Locate X;
>    b. Or concerning the collection, use, disclosure/dissemination, or retention of location data or geolocations and created or shared since 2017;
>
> 5. Any Privacy Impact Assessments (PIAs), Privacy Threshold Analysis (PTAs), privacy policies, instructions, directives, or other privacy analyses:

      a. Concerning use of Babel Street software or Locate X;
      b. Or concerning the collection, use, disclosure/dissemination, or
      retention of location data or geolocations;

6. All reports, legal analyses, white papers, talking points, and briefing
materials:
      a. Concerning use of Babel Street software or Locate X and shared
      by or with ICE since 2017;
      b. Or concerning the collection, use, disclosure/dissemination, or
      retention of location data or geolocations and shared by or with
      ICE since 2017.

34.    EPIC sought "news media" fee status under 5 U.S.C. § 552(a)(4)(A)(ii)(II). EPIC sought

a waiver of duplication fees under 5 U.S.C. § 552(a)(4)(A)(iii).

35.    EPIC sought expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II) and 6 C.F.R. §

5.5(e)(1)(ii). EPIC's FOIA Request cited media publications and statements by congressional

representatives to demonstrate the public's increasing concern over DHS surveillance. EPIC's

FOIA Request showed an urgency to inform the public about ICE's use of location-tracking

software, citing recent public scrutiny about ICE's targeting of immigrants and noncitizens.

Further, EPIC cited *EPIC v. DOD*'s determination that EPIC is a "representative of the news

media" to show EPIC is an organization "primarily engaged in disseminating information."

6 C.F.R. § 5.5(e)(1)(ii); *EPIC v. DOD*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

36.    EPIC never received any correspondence from ICE acknowledging this FOIA request.

37.    EPIC emailed ICE to request a status update regarding EPIC's FOIA request on three

occasions: January 11, 2022, January 24, 2022, and February 2, 2022.

38.    EPIC attempted to call ICE on February 25, 2022, was directed by the automated

message to email ICE inquiries regarding FOIA requests, and was unable to leave a voicemail.

***EPIC's Constructive Exhaustion of Administrative Remedies***

39.     Today is the 105th calendar day since ICE received EPIC's SocialNet FOIA Request. Today is the 71st working day since ICE received EPIC's SocialNet FOIA request, including EPIC's request for expedited processing.

40.     Today is the 105th calendar day since ICE received EPIC's Location Data and Babel Street FOIA Request. Today is the 71st working day since ICE received EPIC's Location Data and Babel Street FOIA request, including EPIC's request for expedited processing.

41.     ICE has failed to make a determination regarding EPIC's requests for expedited processing within the time period prescribed by 5 U.S.C. § 552(a)(6)(E)(ii)(I).

42.     ICE has failed to make a determination on EPIC's FOIA Requests within the period required by 5 U.S.C. § 552(a)(6)(A)(i).

## Count I

***Violation of FOIA: Failure to Comply with Statutory Deadlines***

43.     Plaintiff asserts and incorporates by reference paragraphs 1-42.

44.     Defendant ICE has failed to make a determination on EPIC's FOIA Requests for 71 working days. ICE has thus violated the 20-working-day deadline under 5 U.S.C. § (a)(6)(A)(i).

45.     Defendant ICE has failed to make a determination on EPIC's FOIA Requests for 105 calendar days. ICE has thus violated the 10-calendar-day deadline under § 552(a)(6)(E)(ii)(I).

46.     As Defendant ICE has "fail[ed] to comply with the applicable time limit provisions," Plaintiff has constructively exhausted all applicable administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

## Count II

### *Violation of FOIA: Failure to Grant Request for Expedited Processing*

47.     Plaintiff asserts and incorporates by reference paragraphs 1-42.

48.     Defendant ICE has failed to make a determination on EPIC's expedited processing requests for 105 calendar days. Defendant ICE's failure to "respond in a timely matter" to EPIC's expedited processing requests and grant Plaintiff's requests for expedited processing violated the FOIA statute. 5 U.S.C. § 552(a)(6)(E)(iii).

49.     Plaintiff may obtain injunctive relief regarding an agency determination on EPIC's request for expedited processing. 5 U.S.C. § 552(a)(6)(E)(iii); 5 U.S.C. § 552(a)(4).

## Count III

### *Violation of FOIA: Unlawful Withholding of Agency Records*

50.     Plaintiff asserts and incorporates by reference paragraphs 1-42.

51.     Defendant ICE has failed to search for records responsive to EPIC's FOIA Requests.

52.     Defendant ICE has wrongfully withheld agency records requested by Plaintiff.

53.     Plaintiff has exhausted all applicable administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

## Requested Relief

54.     WHEREFORE, Plaintiff requests this Court:

    a.   Order Defendant to immediately conduct a reasonable search for all responsive records;

    b.   Order Defendant to disclose promptly to Plaintiff all responsive, non-exempt records;

    c.   Order Defendant to grant EPIC's requests for a fee waiver;

    d.   Award EPIC costs and reasonable attorney's fees in this action; and

e.   Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

ALAN BUTLER, D.C. Bar #1012128
EPIC President and Executive Director


/s/ Jeramie D. Scott
Jeramie D. Scott, D.C. Bar # 1025909
EPIC Senior Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1519 New Hampshire Avenue NW
Washington, D.C. 20036
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: March 18, 2022